## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JUSTINE OSORO MOCHAMA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14-cv-02121-KHV-TJJ |
| | ) | |
| TIMOTHY ZWETOW, | ) | |
| | ) | JURY TRIAL REQUESTED |
| RODNEY NICHOLS, | ) | |
| | ) | |
| ALAN VAN SKIKE, | ) | |
| | ) | |
| JANE PATTY-KILL, | ) | |
| | ) | |
| | ) | |
| ANDREW PLEVIAK, | ) | |
| | ) | |
| ADVANCED CORRECTIONAL | ) | |
| HEALTHCARE, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT

1.      Mr. Justine Mochama, a detainee at the Butler County Adult Detention Facility on behalf of the Department of Homeland Security ("DHS") brings  this  suit against five named agents of the DHS, Timothy Zwetow, Alan Van Skike, Jane Patty-Kill, Rodney Nichols, and Andrew Pleviak, as well as Advanced Correctional Healthcare, Inc., ("ACH"), arising from two violent attacks against Justine Osoro Mochama in the early morning of January 28, 2014 by certain named agents and the refusal by ACH to provide necessary medical care afterward.

### *Jurisdiction and Venue*

1

2.     This action is brought pursuant to Kansas common law of negligence (against all Defendants) and Kansas tort law (against the named agents of the DHS under the Supreme Court's decision in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971)) and 42 U.S.C. § 1983 (for Civil Rights violations by ACH).

3.     This Court has original subject matter jurisdiction over the federal questions presented, pursuant to 28 U.S.C. § 1331.

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because the events giving rise to this action occurred in Butler County, Kansas and Sedgwick County, Kansas.

5.     This Court has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

### *Parties*

6.     Plaintiff Justine Osoro Mochama ("Mr. Mochama" or "Plaintiff") is an adult resident of Kansas.

7.     Defendant Advanced Correctional Healthcare, Inc., ("ACH") is an Illinois corporation doing business in Kansas and which contracts with the Butler County Sheriff to deliver health care services to inmates detained at the Butler County Adult Detention Facility.

8.     Defendant Jane Patty-Kill ("Patty-Kill") is an adult resident of Kansas and is sued in her individual capacity under plaintiff's *Bivens* claim and under the claims for negligence and tort under Kansas common law.

9.     Defendant Rodney Nichols ("Nichols") is an adult resident of Kansas

2

and is sued in his individual capacity under plaintiff's *Bivens* claim and under the claims for negligence and tort under Kansas common law.

10.   Defendant Andrew Pleviak ("Pleviak") is an adult resident of Kansas and is sued in his individual capacity under plaintiff's *Bivens* claim and under the claims for negligence and tort under Kansas common law.

11.   Defendant Alan Van Skike ("Van Skike") is an adult resident of Kansas and is sued in his individual capacity under plaintiff's *Bivens* claim and under the claims for negligence and tort under Kansas common law.

12.   Defendant Timothy Zwetow ("Zwetow") is an adult resident of Kansas and is sued in his individual capacity under plaintiff's *Bivens* claim and under the claims for negligence and tort under Kansas common law.

### *Factual Allegations*

### I.   Background

13.   In March, 2013, certain agents of the DHS arrested Mr. Justine Mochama pursuant to an order of removal, directing that he be deported to Kenya because his student visa had expired.

14.   Since March, 2013 until the present day, the DHS has detained Mr. Mochama at the Butler County Adult Detention Facility to await his deportation to Kenya.

15.   In the months following Mr. Mochama's arrest pursuant to his order of removal, Mr. Mochama has cooperated with the efforts by DHS agents to deport him, including, *inter alia*, signing certain paperwork and permitting agents of DHS

to take impressions of his fingerprints.

16.     To date, Mr. Mochama has not been deported to Kenya.

## II. Events Leading to the Two Violent Attacks on Justine Mochama

17.     On January 17, 2014, Mr. Mochama filed a petition for a writ of habeas corpus *pro se* in this Court, which was assigned Case Number 5:14-cv-03015-RDR, alleging that his prolonged detention by DHS had exceeded the presumptively reasonable six-month period identified by the Supreme Court in its decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001).

18.     In the early morning on January 28, 2014 defendants Nichols and Zwetow travelled to the Butler County Adult Detention Facility in Butler County, Kansas.

19.     Mr. Mochama was woken from his sleep before 4:00 AM on January 28, 2014 and told that he would be required to sign and place his inked fingerprint on a Form I-229a.  He was not told he was scheduled to be deported on that day.

20.     Concerned that he was being tricked into signing papers he did not understand or consenting to further detention in spite of his habeas claim, Mr. Mochama told the agents that he would first need to speak with his attorney before signing or putting his fingerprint on any more documents.

21.     According to internal DHS guidance, service of a form I-229(a) must occur within 30 days of the immigrant's detention:

4



22.    The Form I-229a informs immigrants of the consequences of failing to cooperate with removal, and it contains a box for an immigrant's fingerprint to confirm only that he has received the form.

23.    According to the Deportation Officers' Field Manual ("the Manual"), the Form I-229a is a formality – it must be served on "every alien in custody" but does not have to be personally served with proof of service by the Immigrant's fingerprint.  According to the Manual, the form can also be served by certified mail.

24.    Rather than permit him to call his attorney before he signed and fingerprinted the Form I-229a, Zwetow and Nichols physically assaulted Mr.

5

Mochama in the Butler County Adult Detention Facility to try to force him to put his fingerprint on the I-229a.

25.     Zwetow and Nichols physically attacked Mr. Mochama solely because he would not voluntarily sign and place his fingerprint on the immigration papers they had brought with them.  This amounted to excessive force.

26.     At about 4:15 AM, Mr. Mochama was standing with his hands in his pockets next to the booking desk in the booking room at the Butler County Adult Detention Facility.

27.     Zwetow and Nichols approached Mr. Mochama from either side, with Nichols on Mochama's left and Zwetow on Mochama's right.  Nichols put his hands on Mr. Mochama and turned him so that Zwetow was now behind Mochama. Together, Nichols and Zwetow picked Mochama up into the air in an apparent attempt to get his hands free so that he could be forced to fingerprint the I-229a.

28.     Mr. Mochama insisted that he would not fingerprint the form until his attorney could see it. Both men continued to pull on both of Mochama's arms. At 4:16:01 Nichols pulled hard on Mochama's right arm, causing him to fall forward and causing Zwetow, who was holding onto him from behind, to trip as well.

29.     When Zwetow regained his balance, at 4:16:04, he placed his right arm around Mochama's neck in a choke hold from behind and squeezed Mr. Mochama's neck, choking him and pulling him backwards.  Zwetow then crouched with his right knee on the floor and slammed Mr. Mochama head first into the concrete floor.

30.     After his head hit the concrete floor, Mochama took his left arm and

placed it under his head to attempt to prevent the officers from injuring his head further.  Zwetow mounted Mochama and placed both hands on the back of Mochama's neck. Zwetow then placed his left hand on the back of Mr. Mochama's head and forced Mr. Mochama's head into the concrete floor while Nichols tried to force Mr. Mochama's right hand from his pocket to fingerprint the form.

31.    As Nichols continued to try to force Mochama's right hand free, Zwetow retrieved the form and an inkpad to try to force Mr. Mochama to place his fingerprint on the form. By the time he had returned, Nichols was laying with his full weight on Mochama and reaching underneath Mochama to try to pull his arms out.

32.    When Zwetow returned with the paper and inkpad, he placed his right hand on Mr. Mochama's head and pushed it down into the concrete while using his left hand to try to pull at Mr. Mochama's hands. Nichols several times shifted his weight to lay withhis full force on Mr. Mochama, while Zwetown moved around Mr. Mochama and used his hands to push Mochama's head into the ground.

33.    Nichols then began to pick up Mr. Mochama from the ground with both of his hands on Mochama's shoulders, while Zwetow pulled on the hood of Mochama's hooded sweatshirt. They then placed Mr. Mochama in a chair, where he was compliant and allowed the officers to put handcuffs on him.  Mochama then willingly walked into a holding cell.

34.    Zwetow and Nichols used far more force than was necessary or reasonable in the circumstances and caused substantial pain and physical harm to

Mr. Mochama without reason.

35.      The attack on Justine Mochama on the morning of January 28, 2014 was recorded on at least two surveillance cameras at Butler County Adult Detention Facility.

36.      After the attack at Butler County Adult Detention Facility, Zwetow called his boss at the Wichita ICE office to ask what he should do with Mochama, after which Zwetow and Nichols forced Mr. Mochama to travel to the Wichita office of Immigration and Customs Enforcement ("ICE"), located in Sedgwick County, Kansas.

37.      At the Wichita ICE office, Mr. Mochama again asked to be permitted to speak with his attorney. Employees of DHS refused to permit him to do so.

38.      Instead, individuals employed by the DHS, including the five named defendants, again attacked Mr. Mochama.

39.      During this second physical assault, one of the named defendants picked up Mr. Mochama with both arms around Mr. Mochama's stomach, below his rib cage, and lifted him into the air, causing him great pain to his midsection, stomach, hand, and ribcage, and causing Mr. Mochama to be unable to breathe and to fear for his life.

40.      While being involuntarily swung in the air by the unknown DHS agent, Mr. Mochama's foot came into contact with an officer employed by the DHS.

41.      Upon information and belief, this second physical assault on Mr. Mochama was recorded on surveillance equipment of the DHS. Although Mr.

8

Mochama has requested this video through the Freedom of Information Act, the DHS has, to date, refused to produce it.

**III.    Events Following to the Two Physical Beatings of Justine Mochama**

42.    Upon information and belief, employees of DHS took photographs of Mr. Mochama's injuries and the blood on his clothes on January 28, 2014.

43.    Zwetow and Nichols drove Mr. Mochama back to the Butler County Adult Detention Facility on the morning of January 28, 2012 and, upon information and belief, ordered him to be placed in segregation as punishment for allegedly "kicking" a DHS officer.

44.    At no time on January 28, 2014 was Mr. Mochama allowed to call his attorney.

45.    Following the two physical assaults against Mr. Mochama on January 28, 2014, Mr. Mochama requested medical assistance from jail staff who directed the Nurse, who was upon information and belief employed by Defendant ACH, to treat Mr. Mochama.

46.    Mr. Mochama informed the employee or agent of Defendant ACH that he had been beaten about the head and body by ICE officers and that he was experiencing continued pain in his head, right hand, and left elbow and had dried blood on his face.

47.    Upon information and belief, Defendant ACH did not screen Mr. Mochama for a concussion or for internal injuries on January 28, 2014.  Instead, a nurse with the last name of "Larimer" observed that Mr. Mochama had dried blood

on his face and a cut on his ear.  She then gave him Tylenol and escorted him back to his cell.

48.     On Friday, January 31, 2014 officer Karl Timmons, a Deportation Officer employed by the Immigration and Customs Enforcement, Enforcement and Removal Operations, Fugitive Operations Team in Wichita, Kansas, communicated to Justine Mochama that he had viewed the video of the physical assault which had been recorded at the ICE office in Wichita the morning of January 28, 2014 and that, in his opinion, it did not look like Justine Mochama had kicked anyone.

49.     On February 3, 2014, Mr. Mochama, through counsel, wrote to Kenneth Carlson, the Field Office Director for the Kansas City Field Office, which has administrative jurisdiction over the Immigration and Customs Enforcement Office in Wichita, Kansas, to tell him what had happened on January 28, 2014.  To date, Mr. Carlson has not responded.

50.     On March 18, 2014, Mr. Mochama through counsel sent the same message to Todd Nay, Assistant Field Office Director.  To date, Mr. Nay has not responded.

51.     On February 3, 2014, Mr. Mochama, through counsel, made a formal complaint with the DHS Office of Inspector General, asking that the physical assault by DHS officers in Butler and Sedgwick Counties on January 28, 2014 be investigated.  To date, the Office of Inspector General has not responded to this complaint.

52.     On February 6, 2014, Mr. Mochama again sought medical treatment

from Defendant ACH, stating that he continued to have severe headaches and was having bad nightmares, which Mr. Mochama believes to be attributed to his head injuries of January 28, 2014.

53.     Despite his complaints and descriptions of symptoms, Mr. Mochama was not screened for a concussion or for internal injuries by Defendant ACH as a result of his reported head injury on February 6, 2014.

54.     On February 14, 2014, Zwetow came to the Butler County Adult Detention Facility with, inter alia, another form I-229a which he asked Mr. Mochama to sign.  Mr. Mochama informed Zwetow that he would be willing to sign the papers if he could first speak with his attorney to determine what the documents were.

55.     Zwetow responded, stating to Mr. Mochama that they would just write "refused to sign" on his paperwork.  Mr. Mochama repeated that he was not refusing to sign the paperwork and only wanted to speak with his attorney.  Mr. Mochama was not permitted to speak with his attorney until after Zwetow had left on February 14, 2014.

56.     On February 14, 2014, upon information and belief, Zwetow wrote "refused to sign" on a form I-229a, which was not true.  This document was not served on Mr. Mochama's attorney prior to filing the Complaint in this case.

57.     On February 14, 2014, Zwetow wrote wrote "refused to sign" on a document entitled "Instruction Sheet to Detainee Regarding Requirement to Assist in Removal." The Form itself says it must be served on the alien within "30 days" of

the final order of removal, which would have been in April, 2013.  This document was not served on Mr. Mochama's attorney prior to filing the Complaint in this case.  Mr. Mochama did not refuse to sign this form.  He requested a chance to have his attorney review it before he signed it.

58.    On February 14, 2014, Mr. Mochama, through counsel, contacted Kenneth Carlson, informing him that Mr. Mochama had not refused to sign any of the papers shown to him by DHS agents on February 14, 2014 and that despite requesting an opportunity to speak with his attorney, Mr. Mochama was not allowed. To date, Mr. Carlson has not responded.

59.    On March 18, 2014, Mr. Mochama through counsel sent the same message to Todd Nay, Assistant Field Office Director of the Kansas City Field Office. To date, Mr. Nay has not responded.

60.    On February 14, 2014, Officer Zwetow signed a form stating that he had served a document entitled "Notice of Failure to Comply Pursuant to 8 CFR 241.4(g)" on Mr. Mochama.  Neither Mr. Mochama nor his attorney had seen this document before it was provided to counsel March 18, 2014, after the Complaint in this case was filed.

61.    The document described in Paragraph 60 purports to contain the signature of "Ricardo A. Wong, Field Office Director, Chicago, Illinois." However, the signature does not appear to be Mr. Wong's signature:

Ricardo A. Wong, Field Office Director – Chicago, Illinois

62.     The Form described in paragraph 60 contains multiple false statements.

63.     Upon information and belief, Ricardo A. Wong was not present when Mr. Mochama was physically attacked on January 28, 2014.

64.     The two physical beatings of Mr. Mochama on January 28, 2014 have caused him extreme physical pain.  In addition to the immediate pain of being beaten and physically assaulted on January 28, 2014, Mr. Mochama has continued to experience pain in his head and elbow.

65.     Since the two beatings that occurred on January 28, 2014, Mr. Mochama has experienced extreme anxiety and psychological trauma, including inability to sleep, nightmares involving being attacked by officers, depression, and fear that the agents who are in charge of his custody will again return and physically assault him.

**COUNT I**

**ASSAULT AND BATTERY BY ZWETOW, NICHOLS, VAN SKIKE, PATTY-KILL, and PLEVIAK**

66.     Plaintiff incorporates Paragraphs 1 through 65 above.

67.     Defendants Zwetow, Nichols, Van Skike, Patty-Kill, and/or Pleviak threatened to and intentionally did bodily harm to Mr. Mochama, resulting in an

13

immediate apprehension of bodily harm by Mr. Mochama.

68.     Defendants Zwetow, Nichols, Van Skike, Patty-Kill, and/or Pleviak intentionally struck Mr. Mochama on his body with the intent of bringing about either contact or an apprehension of bodily contact that was harmful and offensive.

69.     Defendants Zwetow, Nichols, Van Skike, Patty-Kill, and Pleviak did not use the least amount of force necessary and had no reason to physically assault Mr. Mochama on January 28, 2014.

70.     Defendants Zwetow, Nichols, Van Skike, Patty-Kill, and Pleviak knew or should have known that slamming Mr. Mochama head-first into a concrete floor, repeatedly pushing and hitting his head against the floor, and physically attacking him was dangerous, and they recklessly disregarded the danger of their wanton conduct.

71.     Despite Mr. Mochama demonstrating no risk of harm to the officers, no aggressive behavior, and solely resisting having to sign or imprint a paper without first talking with his attorney, Defendants Zwetow and Nichols intentionally used what are called "Hard Techniques," which DHS training materials describe as "[t]echniques with which there is a greater possibility of injury (e.g., strikes, throws, 'take-downs,' or striking using impact  weapons such as expandable batons, straight batons, authorized less-lethal devices and specialty impact weapons)."

72.     In attacking Mochama on January 28, 2014, Zwetow used what are called "Prohibited Force Acts and Techniques," which DHS training materials say include "Choke holds, carotid control holds, and other neck restraints."

14

73.     As a result of the acts and omissions of these Defendants, Plaintiff has been damaged as alleged in the above Paragraphs.

74.     The acts and omissions of the Defendants were driven by an evil motive or intent, or with reckless or callous indifference to or disregard of the Plaintiff's constitutional rights, by reason of which Plaintiff is entitled to an award of punitive damages against each Defendant in an amount to be determined at trial.

## COUNT II

## NEGLIGENCE BY ZWETOW, NICHOLS, VAN SKIKE, PATTY-KILL, and PLEVIAK

75.     Plaintiff incorporates Paragraphs 1 through 74, above.

76.     Defendants had a duty to use reasonable care in the detention of Mr. Justine Mochama, and in attempting to deport him, which included not physically beating him about the head and body and providing him reasonable medical care.

77.     Defendants had a duty in serving the form I-229a on Mr. Mochama in a manner that would not cause him bodily and mental harm.

78.     A reasonable person under the same circumstances would not have slammed Justine Mochama in the concrete floor solely to obtain his fingerprint for a ministerial form, as described above, and would have provided him with medical treatment, including screening him for a concussion and other internal injuries, following the two beatings described above.

79.     After learning of Mr. Mochama's injuries, Defendants failed to use the degree of skill and learning in treating his medical injuries ordinarily used under the same or similar circumstances by members of the medical profession.

15

80.     Defendants' negligence was the proximate cause of Mr. Mochama's injuries and damages.

81.     As a result of the acts and omissions of the Defendants, Plaintiff has been damaged as alleged in the Paragraphs above.

## COUNT III

## NEGLIGENCE BY DEFENDANT ACH

82.     Plaintiff incorporates Paragraphs 1 through 81, above.

83.     Defendant ACH and its employees and agents had a duty to provide reasonable medical care to Mr. Mochama after being informed that he was beaten about the head and body by DHS agents on January 28, 2014 and returned to the jail complaining of head trauma.

84.     Defendant ACH is and was responsible for the medical treatment of jail inmates housed at the Butler County Adult Detention Facility, including Justine Mochama.

85.     ACH could have screened Mr. Mochama for a concussion or other internal injuries on January 28, 2014 and, upon information and belief, did not do so.

86.     As of the date this Complaint was filed, Mr. Mochama continued to suffer from concussion-like symptoms and from other effects of the head trauma he suffered on January 28, 2014.

87.     On January 28, 2014, February 6, 2014 and at times since then, Defendant ACH has failed to use the degree of skill and learning in treating Mr.

Mochama's medical injuries ordinarily used under the same or similar circumstances by members of the medical profession.

88.    The damages Mr. Mochama has suffered as alleged above have been compounded and multiplied by the negligence of defendant ACH.

## COUNT IV

### 42 U.S.C. § 1983 – UNLAWFUL INTERFERENCE WITH CONSTITUTIONAL RIGHTS BY ACH

89.    Plaintiff incorporates Paragraphs 1 through 88, above.

90.    There is such a substantial nexus between Butler County, Kansas and ACH, given that ACH contracts to perform all medical care for inmates at the Butler County Adult Detention Facility on behalf of Butler County, Kansas, that the actions of ACH and its agents, as alleged in this Complaint, are tantamount to the actions of the State itself and are thus under color of state law.

91.    ACH did not have qualified immunity in its acts and omissions as described herein.

92.    Acting under color of state law, ACH owed Mr. Mochama a duty to not deprive him of his constitutional property and liberty interests.

93.    The actions and omissions of ACH as described in this Complaint violated Mr. Mochama's constitutional property and liberty interests, including but not limited to his right to receive adequate medical care while being detained in the custody of Butler County, Kansas.

94.    As a result of the acts and omissions of ACH, the damages Mr.

17

Mochama has suffered as alleged above have been compounded, lengthened, and worsened.

95.     In addition to his actual damages, Plaintiff is entitled to recover his reasonable attorneys' fees and expenses as provided by 42 U.S.C. § 1988.

## COUNT V

### DEPRIVATION OF CONSTITUTIONAL AND STATUTORY RIGHT TO BE REPRESENTED BY COUNSEL BY DEFENDANTS ZWETOW, NICHOLS, VAN SKIKE, PATTY-KILL, and PLEVIAK

96.      Plaintiff incorporates Paragraphs 1 through 95, above.

97.     Mr. Mochama has a right to be represented by an attorney of his choice during the removal process, which is guaranteed by the United States constitution as well as several Federal statutes and regulations.

98.     Defendants Zwetow, Nichols, Van Skike, Patty-Kill, and/or Pleviak were aware Mr. Mochama wished to be represented by counsel and to have the documents they asked him to sign reviewed by his counsel of choice.

99.     On several occasions, including but not limited to January 28, 2014 and February 14, 2014, even when Mr. Mochama made a specific plea to have his attorney review specific documents he was being forced to sign, Zwetow and others denied Mr. Mochama the right to speak with counsel or to have counsel review the documents he was asked to sign so that he could understand what they said.

100.    On February 14, 2014 Officer Zwetow retaliated against Mr. Mochama for requesting an opportunity to speak with an attorney by falsely writing "refused

18

to sign" on documents which Mr. Mochama did not refuse to sign, and without letting his attorney review those documents. This retaliation violated Mr. Mochama's constitutional right to access to counsel.

101. On Tuesday, March 18, 2014, after the original Complaint was filed in this case, Deportation Officer Karl Timmons called Mr. Mochama's attorney by telephone to inform him that new paperwork would be served on Mr. Mochama's attorney regarding the deportation process.

102. Later on Tuesday, March 18, 2014, Deportation Officer Karl Timmons sent to Mr. Mochama's attorney a set of documents which he alleged were previously "served" but which had never previously been served on his attorney. These included the document described in Paragraph 60, which Mr. Mochama had never previously seen.

103. The document described in Paragraph 60 is required by 8 C.F.R. § 241.13(e)(2) to be served on the immigrant's attorney.

104. Although Mr. Mochama did not receive the documents described in Paragraph 60 prior to this Complaint being filed, if Zwetow had in fact served these documents on him, Zwetow knew or should have known at that time that Mr. Mochama wished to be represented by a specific attorney.

105. The document described in Paragraph 60 which was provided for the first time by Karl Timmons on March 18, 2014, contains a check box confirming that it has been sent to counsel and that a copy has been placed in the immigrant's "A-file," but neither box is not checked:

19

( ) cc: Attorney of Record or Designated Representative
( ) cc: A-File

106.   On March 19, 2014, DHS officers Karl Timmons and Greg Perez served Mr. Mochama with some of the documents described in Paragraph 102 at the Butler County Adult Detention Facility.  In response to a question from Mr. Mochama about calling his attorney, Greg Perez stated to Mr. Mochama "I don't give a shit about your lawyer."

107.   Other than requesting an opportunity to speak with his attorney and to have his attorney review documents, Mr. Mochama has cooperated with specific efforts by DHS to remove him, including, but not limited to, signing documents requested of him on July 24, 2013, cooperating with the file review process, and submitting to fingerprinting on July 24, 2013 upon the request of the Department of Homeland Security.

108.   Because Mr. Mochama's cooperation with his removal efforts is a crucial factor in DHS's decision to continue Mr. Mochama's detention, the actions by Zwetow in writing "refused to sign" on the forms on February 14, 2014, in contributing to the false statements in the document described in Paragraph 60, and in refusing to permit Mr. Mochama to speak with counsel or permit counsel to review these documents on January 28, 2014 and February 6, 2014 is a proximate cause of Mr. Mochama's extended detention in Butler County Adult Detention Facility beyond the presumptively reasonable 6-month period.

20

109.    In addition to depriving Mr. Mochama of his constitutional rights, the actions of Defendants Zwetow, Nichols, Van Skike, Patty-Kill, and/or Pleviak have caused Mr. Mochama to suffer from physical and psychological damage, as alleged above.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby designates Kansas City, Kansas as the place of trial.

## JURY DEMAND

Plaintiff hereby requests a trial by Jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court, after trial by jury, enter judgment against Defendants for Plaintiff's actual damages in excess of $75,000, nominal damages, and punitive damages, including reasonable attorneys' fees, for expenses and costs, and for such further legal and equitable relief as the Court deems just.

Respectfully submitted,

Dunn & Davison, LLC
1100 Walnut Street
Suite 2900
Kansas City, MO  64106

By: s/ *Matthew L. Hoppock*
Matthew L. Hoppock – Kan. #23854